DAVID M. GIVEN (State Bar No. 142375)
M. JAKE FEAVER (State Bar No. 303456)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA   94129
Telephone:  415-398-0900
Fax:          415-398-0911
Email: dmg@phillaw.com
         mjf@phillaw.com

Attorneys for Plaintiff

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN WILLIAM SMITH, JR., etc., <br><br> Plaintiff, <br><br> v. <br><br> AMC NETWORKS, INC., a Delaware corporation, et al., <br><br> Defendants. | Case No: 5:18-cv-03803-LHK <br><br> **SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, ETC.** <br><br> **JURY TRIAL DEMANDED** |

## SUMMARY OF THE CASE

1.     This is a civil action for copyright infringement of protected elements of plaintiff's three-volume comic book series entitled DEAD AHEAD, and for breach of fiduciary duty with respect to same, which defendants copied and subsequently used, performed and exploited without permission in the television series FEAR THE WALKING DEAD.

## JURISDICTION AND VENUE

2.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 & 1338(a).

3.     This Court has personal jurisdiction over defendants because they conduct business in the State of California, both in connection with the facts giving rise to this lawsuit and during the general course of their affairs, and have sufficient minimum contacts in this

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA   94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

State, or otherwise intentionally avail themselves of the markets within or the laws of the State of California, through the promotion, sale, and marketing of their goods or services, so as to render the exercise of jurisdiction by this Court proper and necessary.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) & (3) as well as 28 U.S.C. § 1391(c) in that the unlawful acts alleged below were intentional and were conceived, carried out, or made effective by defendants, and caused harm to plaintiff, within this District.

## PARTIES

### Plaintiff

5.      Plaintiff MELVIN WILLIAM SMITH, JR., also known as MEL SMITH, is an individual residing in this District.  He is a published comic book artist, writer and creator.

### Defendants

6.      Defendant AMC NETWORKS, INC. ("AMC Parent") is a publicly-owned corporation organized and existing under the laws of Delaware.  It is licensed to do business in this State.  According to public filings, (A) AMC Parent is the parent entity of the other AMC entities named below (together with the AMC Parent, collectively the "AMC Entities"); (B) AMC Parent wholly owns directly or indirectly, and has corporate control over the other AMC Entities, including directing the financial and business relationships between and among them as well as the allocation of cost, revenue and profit as they relate to or derive from FEAR THE WALKING DEAD; and (C) the AMC Entities share the same two business addresses and many of the same officers, directors, members, managers and organizers.

7.      Defendant AMC FILM HOLDINGS, LLC ("AMC Holdings") is a limited liability company organized and existing under the laws of Delaware.  It is licensed to do business in this State.  According to public filings, (A) AMC Holdings claims an ownership interest in FEAR THE WALKING DEAD, including the episodes at issue in this lawsuit; (B) one or more of the AMC Entities have referred to AMC Holdings as "AMC Studios," conflating it with the next named defendant; and (C) documents made available by the AMC Entities to one or more of the non-AMC Entities named defendants herein make conflicting representations about the relationships among the AMC Entities and the interests and obligations held among

1   them with respect to FEAR THE WALKING DEAD.  AMC Holdings shares officers with AMC

2   Parent.

3          8.      Defendant AMC TV STUDIOS, LLC ("AMC Studios"), formerly known as

4   AMC Television Productions LLC, is a limited liability company organized and existing under

5   the laws of the State of Delaware.  It is licensed to do business in this State.  According to public

6   filings, AMC Studios operates as a television production company, including for the

7   development, scripting, casting and production of FEAR THE WALKING DEAD.  AMC

8   Studios shares officers with AMC Parent.

9          9.      Defendant AMC NETWORK ENTERTAINMENT, LLC ("AMC Network") is a

10  limited liability company organized and existing under the laws of Delaware.  It is licensed to do

11  business in this State.  AMC Network does business as AMC, also known as AMERICAN

12  MOVIE CLASSICS, exhibits (broadcasts) FEAR THE WALKING DEAD via cable television,

13  and on information and belief does so in cooperation and coordination with other AMC Entities

14  including those named here as well as with the following named defendants.  AMC Nework

15  shares officers with AMC Parent.

16         10.     Defendant SKYBOUND PRODUCTIONS, INC. ("Skybound") is a corporation

17  organized and existing under the laws of California with its principal place of business in

18  California.  It is in the business of publishing comics and producing film and television projects,

19  including in connection with FEAR THE WALKING DEAD.

20         11.     Defendant CIRCLE OF CONFUSION PRODUCTIONS, LLC ("Circle") is a

21  limited liability corporation organized and existing under the laws of California with its

22  principal place of business in California.  It is in the business of producing film and television

23  projects by furnishing the producing and related services of David Alpert, including his work on

24  FEAR THE WALKING DEAD.

25         12.     Defendant NEW CIRCLE OF CONFUSION PRODUCTIONS, LLC ("New

26  Circle") is a corporation organized and existing under the laws of California with its principal

27  place of business in California.  It is in the business of producing film and television projects by

28  furnishing the producing and related services of David Alpert, including his work on FEAR

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

1   THE WALKING DEAD, and is the successor-in-interest to Circle with respect to his executive

2   producer services for FEAR THE WALKING DEAD.

3        13.     Defendant VALHALLA ENTERTAINMENT, INC. ("Valhalla") is a corporation

4   organized and existing under the laws of California with its principal place of business in

5   California.  It is in the business of producing film and television projects, by furnishing the

6   producing and related services of Gail Anne Hurd, including her work on FEAR THE

7   WALKING DEAD.

8        14.     Defendant ROBERT KIRKMAN, LLC is a limited liability company organized

9   and existing under the laws of Kentucky with its principal place of business in California.  It is

10  licensed to do business in this State.  It is in the business of writing and producing television

11  programs by furnishing the writing, producing and related services of Robert Kirkman,

12  including his work on FEAR THE WALKING DEAD.

13       15.     Defendant ROBERT KIRKMAN is an individual residing in the State of

14  California.  At all relevant times, he was Chief Operating Officer of the original publisher of

15  DEAD AHEAD, Image Comics, located in Berkeley, California, a principal (together with

16  David Alpert) of Skybound, principal, owner, manager, and member of ROBERT KIRKMAN,

17  LLC, and is credited as an executive producer and "creator" of FEAR THE WALKING DEAD.

18  Defendants ROBERT KIRKMAN, LLC and ROBERT KIRKMAN are referred to collectively

19  herein as "Kirkman."  At all relevant times, Kirkman had access to DEAD AHEAD.

20       16.     Defendant DAVID ALPERT is an individual residing in the State of California.

21  At all relevant times, he served as an agent representative of plaintiff SMITH, was a principal

22  (together with Robert Kirkman) in Skybound, a principal of both Circle and New Circle, the

23  long-time manager and business partner of Robert Kirkman, and is credited as an executive

24  producer of FEAR THE WALKING DEAD.  Defendants DAVID ALPERT, Circle and New

25  Circle are collectively referred to herein as "Alpert."  At all relevant times, Alpert had access to

26  DEAD AHEAD.

27       17.     Plaintiff is informed and believes, and thereon alleges, that each defendant is in

28  some manner responsible for the wrongs and damages alleged below, and in so acting was

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

functioning, at least at times, as the agent, servant, partner, alter ego or employee of the other

defendants, and in doing or not doing the actions mentioned below was acting within the course

and scope of his or her or its authority as such agent, servant, partner or employee with the

permission and consent of the other defendants.  Further, all acts herein alleged were approved

of and ratified by each and every other defendant.

## **FACTS COMMON TO BOTH CLAIMS**

18.     In or about 2007-08, plaintiff authored or commissioned others to co-author with

him the literary work DEAD AHEAD.

19.     In or around March 2007, plaintiff licensed DEAD AHEAD to Image Comics for

publication.  Image Comics published DEAD AHEAD as a three-part comic book series, the

first issue (internally entitled "Water Water Everywhere") appearing in Sept. 2008, with the

subsequent two issues appearing Jan. 2009 and March 2010.  Upon information and belief, at all

relevant times, as COO of Image Comics, Robert Kirkman was aware of this license and DEAD

AHEAD, had available to him unlimited copies of the work (including digital versions), and

read it.

20.     DEAD AHEAD was unique in this important respect:  Upon information and

belief, it featured for the first time a story of zombies on the high seas.[1]

21.     DEAD AHEAD achieved success as a comic book and plaintiff later republished

it as a single-volume graphic novel with 14 additional pages of "bonus" material.  Plaintiff

provided copies of the graphic novel to both individual defendants.

22.     Shortly after DEAD AHEAD first appeared, individuals in the motion picture and

television industry took note of it.  One such individual was Gloria Fan, a motion picture

---

[1] For present purposes, the term "zombie" has a particular meaning.  It ties to the version that
emerged in popular culture during the latter half of the 20th century.  The 1968 motion picture
classic "Night of the Living Dead" is often credited as the progenitor of this modern fictional
zombie – a reanimated corpse hungry for human flesh.  See Alissa Wilkinson, "George Romero
didn't mean to tackle race," etc., Vox (July 22, 2017); Maya Salam, "George Romero, Father of
the Zombie Movie, Dies at 77," N.Y. Times (July 16, 2017) (describing Romero as "a horror
visionary who created the modern zombie genre with his 1968 cult film, 'Night of the Living
Dead'").

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

1  producer.  Another such individual was David Alpert, introduced to plaintiff by the then-

2  President of Image Comics.

3      23.    By Nov. 2008, Alpert was acting as plaintiff's agent.  He continued to do so until

4  at least April 2013.

5      24.    During this period, Alpert was charged with representing plaintiff's interests for

6  the purpose of consulting with motion picture and television studios on the use or exploitation of

7  DEAD AHEAD.  In this capacity, Alpert worked with Gloria Fan.  Colleagues of Ms. Fan were

8  developing screenplays, treatments (i.e., short narrative synopses) and other materials based

9  upon and derived from DEAD AHEAD in consultation with plaintiff to pitch plaintiff's work to

10  motion picture and television studios for production and distribution.

11      25.    To develop those materials, plaintiff authored and provided Ms. Fan biographical

12  notes constituting the "back story" for nine characters in DEAD AHEAD.  Plaintiff expected

13  and intended for Ms. Fan to share these notes with Alpert and, upon information and belief, she

14  did so: Among other things, portions of these notes made their way into FEAR THE WALKING

15  DEAD; in all likelihood, that happened via Alpert.  Plaintiff also expected and intended those

16  notes to be used solely to further the efforts of both Alpert and Ms. Fan on his behalf.

17      26.    Over time, plaintiff provided Alpert (at his request) with dozens of copies of

18  DEAD AHEAD, consulted with him on the development of and prospects for DEAD AHEAD,

19  and shared confidences with him.

20      27.    In Oct. 2010, the first episode of THE WALKING DEAD appeared on the AMC

21  network.  Both Alpert and Kirkman were credited as executive producers, and were and remain

22  involved in all or virtually all creative elements, of the show.  THE WALKING DEAD quickly

23  became a smash hit, going on to become the highest-rated series in cable television history –

24  and, according to public reporting, part of a billion dollar plus franchise.  It is now in its ninth

25  season.

26      28.    By early 2013, the participants in THE WALKING DEAD were looking for

27  ways to leverage its success.  In furtherance of those efforts, in or about March 2013, one or

28  more of the AMC Defendants provided Kirkman, Alpert and Valhalla written offers for their

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

creative services in an "untitled TWD spin-off." Ultimately, Defendants conceived of the spin-off as a prequel to or derivative series of THE WALKING DEAD.

29. That spin-off became FEAR THE WALKING DEAD, which premiered on the AMC network in Aug. 2015. As noted above, Kirkman and Alpert were credited as executive producers, and both were and remain involved in all or virtually all creative elements, of the show.

30. In the lead up to that premiere, the AMC Defendants tied the advertising and promotion of FEAR THE WALKING DEAD to THE WALKING DEAD. In addition, FEAR THE WALKING DEAD aired on the same day of the week and at the same time as THE WALKING DEAD, and when its first season ended after six episodes, THE WALKING DEAD took its place on that day and that time the following week.

31. FEAR THE WALKING DEAD went on to become the highest-rated first season of any show in cable television history. In the final episode of that season, which aired in Oct. 2015, the protagonist ends up on a beach and, in the final shot, the camera pans out to the water, hinting at the setting for the next season – the high seas.[2]

32. Defendants emphasized the setting of the second season of FEAR THE WALKING DEAD in advertising and promotional material substantially similar to and derived from a panel contained in the graphic novel version of DEAD AHEAD:

_____

[2] In a companion "talk show" series entitled THE TALKING DEAD, showrunner Dave Erickson explained: "I think we always knew we would end up on the coast. It was important to Robert [Kirkman] and I that we played the Pacific. It wasn't until late though in the writer's room we decided that it was going to be a boat." See The Talking Dead: *Talking Fear* (AMC television broadcast Oct. 4, 2015). As noted in greater detail below, both relevant works are set on the Pacific Ocean along the Southern California coastline and open with eight individuals, four men and four women, on an ocean-going vessel headed South toward Mexico to escape both the zombie apocalypse infecting the U.S. and the military authorities forcing civilian evacuations from the coast.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

### DEAD AHEAD

Acme Ink Edition, pg. 26



### FEAR THE WALKING DEAD

AMC-TV Ad Copy, 2015-16



33.     In communications with Ms. Fan and others, plaintiff noted the "skull and boat" panel and suggested its use as an image in advertising and promotional material for any film or television version of DEAD AHEAD.  When plaintiff provided the panel to Image Comics as part of the bonus material included in the graphic novel version of DEAD AHEAD, its then-President and the person responsible for introducing plaintiff to Alpert wrote: "Those pages rock! That shot of that skull with the birds flying out of it makes me kick myself for not thinking of it – brilliant."

## FIRST CLAIM FOR COPYRIGHT INFRINGEMENT

### (Against All Defendants)

34.     Plaintiff realleges paragraphs 2 through 33, above.

35.     Both the comic book and graphic novel version of DEAD AHEAD are original to plaintiff and his co-authors and are copyrightable subject matter under U.S. law.

36.     In or around Jan. 2017, plaintiff registered both versions of DEAD AHEAD with the U.S. Copyright Office.  The Copyright Office acknowledged receipt of that registration on or about Jan. 9, 2017.  It has since issued plaintiff certificates of registration for DEAD AHEAD Issue 1 (TX8602384), Issue 2 (TX8602387), Issue 3 (TX8582238), as well as the derivative graphic novel version of Issue 1, containing the 14 pages of bonus material, of the DEAD AHEAD TRADE PAPERBACK (TX8604687).

37.     Plaintiff is an owner and exclusive administrator of all right, title and interest in and to the foregoing copyright.  DEAD AHEAD has been published or otherwise exploited by plaintiff, or by others under plaintiff's authority or license – including pursuant to his agreement with Image Comics – in conformity with the Act.

38.     At no time has plaintiff authorized defendants, or any of them, to reproduce, distribute, perform, create derivative works based on or otherwise exploit all or any portion of DEAD AHEAD.

39.     Within the last three years, defendants, and each of them, infringed plaintiff's copyright in DEAD AHEAD, directly or indirectly, by, among other things, reproducing,

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

distributing, performing, broadcasting or otherwise exploiting the second season of FEAR THE WALKING DEAD.

40.    Portions of that season's 15 episodes were copied from DEAD AHEAD.  That copying includes, without limitation, original protected elements of plot, events and sequence; characters and dialogue; themes; and setting, mood and pace, summarized as follows:[3]

41.    <u>Plot, Events and Sequence</u> – Both works share many of the same events arranged in the same sequence as well as an identical premise, i.e., that a ragtag group of individuals thrown together by circumstance escape a zombie apocalypse from Southern California by fleeing to the Pacific Ocean on board a boat heading south towards Mexico. Both DEAD AHEAD and the first episode of Season 2 of FEAR THE WALKING DEAD begin on a similarly sized boat located in the Pacific Ocean, off the coast of Southern California, with eight individuals.  They are survivors of an apocalypse who believe they can avoid zombies at sea and they are anxious (at first) to evade military ships while developing a plan to head south along the coast:

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|:---:|:---:|
| Issue 1, pg. 8 | AMC TV Ad Copy, 2015-16 |
|  |  |

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

---

[3]  Plaintiff does not intend the following to be a complete statement of the protected elements of his work or of the relevant similiarites between that work and FEAR THE WALKING DEAD. Defendants should not therefore take it to forclose the possibility of a later proffer of additional probative evidence, including expert opinion, on both subjects.

Early in both works, the characters consult a map and chart their course south from Southern California, and both works use that scene as a narrative device to lay out similar expository information regarding other characters (i.e., individuals trapped on a seafaring vessel):

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|---|---|
| Acme Ink Edition, pg. 15 | |
|  | Season 2, Ep. 2, "We All Fall Down" |
| |  |
| Issue 1, pg. 13-14 | |
|  | |

At the beginning of both works, the main characters learn of concerted military action against civilians along the California coast: IN FEAR THE WALKING DEAD, military forces have

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

burned down San Diego (Season 2, Episode 2) and appear to threaten other coastal cities; in DEAD AHEAD, military forces have confiscated all civilian watercraft (Issue 1, pg. 6), illustrating the destruction of California's coastal cities as burning to the ground:

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
| :---: | :---: |
| Issue 1, pg. 35 | Season 2, Episode 1, "Monster" |
|  |  |

The narrative of both works explains the military's action as intended to move humans away from the coast and to herd them inland so that the military can use or kill them.  In both works, the main characters initially expect the ocean to be safe from zombies.  That feeling of safety is exemplified in both works' depiction of: fishing, communicating via HAM radio, and surveying the sea from time to time:

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|---|---|
| Issue 1, pg.3 | Season 2, Episode 1, "Monster" |







| Issue 1, pg. 2 | Season 2, Episode 1, "Monster" |
|---|---|





PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|---|---|
| Issue 1, pg. 3 | Season 2, Episode 5, "Captive" |
|  |  |
| Issue 1, pg. 4 | |
|  |  |

Early in both works, the main characters encounter zombies at sea.  In both works, the main characters are surprised to find that zombies have adapted to the open water.  Early in both works, the ship's propeller is used against the zombies:

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

### DEAD AHEAD

Acme Ink Edition, pg. 26

 

### FEAR THE WALKING DEAD

Season 2, Ep. 1, "Monster"



PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

In both works, the main characters then make the decision to tack back toward the coast due to this unanticipated danger, and seek refuge at an abandoned resort hotel, where a pier features prominently; but their search for supplies, shelter, and relief from the zombie hordes is interrupted, and they barely make it out of what turn out to be zombie-ridden hotels and eventually lose their boats (Season 2, Episodes 9-13; Graphic Novel, page 20).  In DEAD AHEAD, the survivors then encounter an abandoned cruise ship essentially serving as an abandoned resort hotel at sea, and many of the events transpiring on the cruise ship are virtually identical to the events transpiring at the resort hotel and on the yacht ("The Abigail") in FEAR THE WALKING DEAD.  For example, in DEAD AHEAD, the crew encounters zombies and pirates on the cruise ship; in FEAR THE WALKING DEAD, the character Strand discovers The Abigail occupied by zombies and pirates when he reboards the yacht. In DEAD AHEAD, Jack races to the engine room to both hide from the zombies and attempt to start the cruise ship; in FEAR THE WALKING DEAD, Travis races to the engine room to start the ship.  In DEAD AHEAD, the crew seeks refuge in an elevator; in FEAR THE WALKING DEAD, Alicia flees zombies by hiding in an elevator shaft.  In DEAD AHEAD, Jack is outnumbered by zombies and he tries to destroy the boat and remaining zombies by shooting the fuel filters to explode them and burn the ship; in FEAR THE WALKING DEAD, Strand sets the Abigail on fire in an attempt to destroy the zombies. In both stories, the main characters come to realize that the resort and yacht (FEAR THE WALKING DEAD) and resort and cruise ship (DEAD AHEAD) will not provide them lasting refuge from the zombies.

42.   Characters and Dialogue – Both works begin with eight characters, four men and four women, on board their respective vessels struggling to survive a post-apocalyptic world on water.  Both works' central protagonist is a male educator – Captain Jack in DEAD AHEAD, Travis Manawa in FEAR THE WALKING DEAD.  Both Captain Jack and Travis Manawa are thrust into a leadership role that they are ill-prepared for, given their ostensible backgrounds, but rise up to the occasion.  Both works feature a mysterious, red-headed, female, rifle-sporting character of around the same age named Red, both of whom have fringe bangs and carry similar rifles with the exact same scope:

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|---|---|
| (Issue 2, pg. 1-3) | Season 2, Ep. 4, "Blood in the Streets" |














SECOND AMENDED COMPLAINT – Case No. 5:18-cv-03803-LHK

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

Both works feature a Central-American crew member with a military background whose dialogue is a mixture of English and Spanish and who sports a goatee and carries a pistol (Emile in DEAD AHEAD, Daniel in FEAR THE WALKING DEAD):

| __DEAD AHEAD__ | __FEAR THE WALKING DEAD__ |
|---|---|
| Issue 2, pg. 18 | Season 2, Ep. 3, "Ouroboros" |
|  |  |

Both works feature pirates: In DEAD AHEAD, a sinister and rapacious group (characteristics akin to pirates) boards a cruise ship filled with cruise passengers who have been transformed into zombies; in FEAR THE WALKING DEAD, pirates seize the yacht before it is wrecked by the main characters who endeavor to kill the zombies who are aboard.

43.   <u>Theme</u> – Both works present themes of life versus death and the nature of survival in a somber and dark context, while finding a way to celebrate the resilience of the human spirit and to believe in hope against all odds, if only for the few:

A.   <u>Life v. Death</u>:  In both works, the characters are literally in a battle with the dead, and must fight to survive each moment of every day against a very real, yet very dead, threat.  In both works, this distinction is an internal one, as the characters are repeatedly faced with the decision to fight to survive or end their own lives before they are swallowed-up by their hellish reality.

B.   <u>Nature of Survival</u>:  Both works emphasize the notion of "this new world" or this "mad world" in which the characters must adapt, die, or capitulate. In both works, the main characters must go on the offensive and fight to survive, rather than flee and escape.

C.   <u>Resilience of the Human Spirit</u>: The characters in both works fight battle-after-battle, time and time again.  They are never safe and life-threatening danger is always imminent.  Although there is little-to-no hope of the characters' finding an oasis in either work, they still find the will to overcome these obstacles.

44.   <u>Setting, Mood and Pace</u> – Both works present similar settings, mood and pace:

A.   <u>Setting</u>:  Both works feature stories of fleeing a zombie apocalypse on the high seas.  Both feature a resort hotel prominently, and the events taking place on the cruise ship and the resort in DEAD AHEAD track the events taking place on the resort and the yacht in FEAR THE WALKING DEAD. A significant part of the two works take place on mid-size vessels travelling south from the Southern California coast toward South America.  In both works, the boats make stops along the way to search for supplies or signs of life.  The works' narrative starts at the same place and takes place in the same part of the ocean. Elevators and engine rooms are used as places of refuge and tension in both works.  In both stories, zombies invade sandy knolls and dunes that emerge from the Pacific Ocean, where the main characters are forced to slaughter what they can and barely escape with their lives:

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

| **DEAD AHEAD** | **FEAR THE WALKING DEAD** |
|---|---|
| Issue 1, pg. 5 | Season 2, Ep. 3, "Ouroboros" |
|  |  |
| Acme Ink Edition, pg. 17 | Season 2, Ep. 3, "Ouroboros" |
|  |  |

B.    Mood:  Both works present moods that are dark, deliberate, weighty, and purposeful.  Both works eschew any kitsch or comedy.  Both stories are sad and somber and end in an unresolved manner.  A striking depiction of the mood in DEAD AHEAD is the depiction of a skull in the sky above the ocean against a fiery red/orange sky, an image nearly identical to the artwork later created for and commonly attributed to FEAR THE WALKING DEAD (see paragraph 32, above).

C.    Pace:  Both works are blanketed with somber and foreboding tones and are paced at breakneck speeds, with gory, violent zombie attacks lurking around every corner, populated by characters who are in perpetual flight from horrific, ungodly, unearthly, lethal predators.

45.    Defendants continue to infringe plaintiff's copyright.  Accordingly, plaintiff is entitled to the equitable and legal remedies set out in the federal Copyright Act.

## SECOND CLAIM FOR BREACH OF FIDUCIARY DUTY

### (Against All Defendants)

46.    Plaintiff realleges paragraphs 2 through 45, above.

47.    As plaintiff's motion picture and television agent, Alpert owed and continues to owe plaintiff a fiduciary duty to act with the highest fidelity and utmost good faith regarding all matters related to DEAD AHEAD.

48.    Alpert violated and continues to violate his fiduciary obligation to plaintiff by engaging in a pattern and practice of self-dealing, placing his own interests ahead of the interests of his principal and client, wrongfully depriving plaintiff income from the use and exploitation of DEAD AHEAD, including the ideas embodied therein, and using his principal's and client's intellectual property to enrich himself.  In so doing, Alpert failed both to preserve his confidential communications with plaintiff and to disclose to plaintiff the conflict inherent in his business and creative involvement with the other named defendants as alleged above.

49.    On information and belief, all the other defendants named above knew of Alpert's relationship with and the services he was providing plaintiff.  For example, plaintiff was introduced to David Alpert via a co-founder of Image Comics, the original publisher of DEAD AHEAD, where Robert Kirkman was Chief Operating Officer; David Alpert and Robert Kirkman were and remain principals in Skybound and long-time business partners who were in possession of dozens of copies of DEAD AHEAD and who, together with the other producing defendants named here, were closely involved in the creative process of developing, scripting, casting and producing FEAR THE WALKING DEAD, including the episodes at issue in this lawsuit. By way of further example, one or more of the AMC Entities employed showrunner

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

Dave Erickson, who worked closely and in concert with David Alpert and Robert Kirkman in the development, scripting, casting and production of FEAR THE WALKING DEAD, including the episodes at issue in this lawsuit; as showrunner and a credited co-creator, Dave Erickson served as the primary creative contributor acting on behalf of the AMC Entities, in their collaboration in and funding of the development, scripting, casting and production of FEAR THE WALKING DEAD.

50.   By the acts and conduct alleged above, these defendants substantially assisted and therefore aided and abetted Alpert in breaching his duty to plaintiff.  As such, those actions and conduct were a contributing and substantial factor in causing harm to plaintiff.

51.   As a direct and proximate result of the foregoing acts and conduct, plaintiff has been damaged in an amount which he cannot ascertain with complete certainty plus interest thereon, to be proven at trial.

52.   The acts and conduct alleged above were committed with oppression, fraud or malice, as defined by California Civil Code § 3294, and justify the awarding of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment against each defendant as follows:

A.   Awarding plaintiff compensatory damages in an amount to be ascertained;

B.   Awarding plaintiff defendants' profits from the use and exploitation of DEAD AHEAD in an amount to be ascertained;

C.   Awarding plaintiff punitive damages;

D.   Awarding plaintiff prejudgment interest; and

E.   Awarding plaintiff such other and further relief as equity and justice may require.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

Dated:  October 9, 2018          PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By  /s/ David M. Given
   David M. Given


   Vivek Sridharan (State Bar No. 264938)
   COUNSEL LLP
   The Hind Building
   230 California Street, Suite 201
   San Francisco, CA 94111
   Telephone:  415-227-0555
   Fax:  415-227-9419
   vsridharan@counselllp.com

   Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.


Dated:  October 9, 2018                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By: /s/ David M. Given
        David M. Given
        Attorney for Plaintiff

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900