GRODSKY & OLECKI LLP
Allen B. Grodsky (SBN 111064)
*allen@thegolawfirm.com*
Courtney L. Puritsky (SBN 251330)
*courtney@thegolawfirm.com*
Tim B. Henderson (SBN 281159)
*tim@thegolawfirm.com*
2001 Wilshire Boulevard, Suite 210
Santa Monica, California 90403
Telephone:  (310) 315-3009
Facsimile: (310) 315-1557

Attorneys for Defendants Skybound Productions,
Inc., Circle of Confusion Productions, LLC,
New Circle of Confusion Productions, Inc.,
Robert Kirkman, LLC, Robert Kirkman, and
David Alpert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**SAN JOSE DIVISION**

| | |
|---|---|
| MELVIN WILLIAM SMITH, JR., a/k/a MEL SMITH, an individual,<br><br>            Plaintiff,<br><br>v.<br><br>AMC NETWORKS, INC., a Delaware corporation; AMC FILM HOLDINGS, LLC, a Delaware limited liability company; et al.,<br>            Defendants. | Case No.  5:18-cv-03803-LHK<br><br>Hon. Lucy H. Koh<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6) BY DEFENDANTS SKYBOUND PRODUCTIONS, INC., CIRCLE OF CONFUSION PRODUCTIONS, LLC, NEW CIRCLE OF CONFUSION PRODUCTIONS, INC., ROBERT KIRKMAN, LLC, ROBERT KIRKMAN, AND DAVID ALPERT**<br><br>Date:    Jan. 17, 2019<br>Time:   1:30 p.m.<br>Div.:    San Jose<br>Place:  Courtroom 8 |

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE COURT NEED ONLY REVIEW THE WORKS
     TO DECIDE SUBSTANTIAL SIMILARITY, NO
     EXPERT OR EXTRINSIC EVIDENCE IS NECESSARY . . . . . . . . . . . . . . . . 2

III. A REVIEW OF THE WORKS DEMONSTRATES
     THAT THEY ARE NOT SUBSTANTIALLY SIMILAR . . . . . . . . . . . . . . . . . 2

     A.   Mood, Dialogue, Pace, and Theme . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Setting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   Characters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.   Plot and Sequence of Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                             **Page(s)**

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) .................................... 3, 8

*Capcom Co. v. MKR Grp., Inc.*,
    No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ........... 7

*Funky Films v. Time Warner Entm't*,
    462 F.3d 1072 (9th Cir. 2006) .................................. 2, 7, 9

*Kouf v. Walt Disney Pictures & Telev.*,
    16 F.3d 1042 (9th Cir. 1994) ....................................... 8

*Olson v. Nat'l Broadcasting Co.*,
    855 F.2d 1446 (9th Cir. 1988) ...................................... 4

*Shame on You Prods., Inc. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) .............................. 6

*Silas v. Home Box Office, Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) .......................... 2, 3, 6

*Wilson v. Walt Disney Co.*,
    No. 14-CV-01441-VC, 2014 WL 4477391 (N.D. Cal. July 30, 2014) ........ 9

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................ 2, 8

# I.     INTRODUCTION

Plaintiff's Opposition (Dkt. 70, the "Opposition") to the Skybound Defendants' Motion to Dismiss (Dkt. 66, the "Motion") offers rank speculation about the "likely extrinsic evidence" Plaintiff's unidentified experts might one day expound, foments conspiracy theories about defense lawyers dictating creative choices to conceal copyright infringement, and tries to convince the Court to review only those parts of *Fear the Walking Dead* cherry-picked by Plaintiff. In other words, Plaintiff wants the Court to do anything but what is necessary under the extrinsic test: review *Dead Ahead* and *Fear the Walking Dead* and decide whether they are substantially similar. The Court should not indulge the Plaintiff's baseless hypotheticals or limit its review of the works. The works are properly before the Court and the Court is more than capable of watching the television show and reading the comic book and deciding whether they are substantially similar in mood, dialogue, pace, theme, setting, characters, plot, and sequence of events.

The Motion focused on each of these factors, demonstrating that many parts of Plaintiff's work that were allegedly infringed are actually generic scenes-a-faire that flow from the unprotectable idea of "zombies on the high seas." Plaintiff cannot obtain copyright protection and exclude Defendants and all others from telling a zombie story on the ocean or depicting a character looking out at the sea with binoculars or using a radio while on the water. Moreover, the Motion further demonstrated that even those parts of *Fear the Walking Dead* selected by Plaintiff as being substantially similar to *Dead Ahead* are rife with meaningful differences. In his Opposition, Plaintiff ignores much of the Motion's analysis as "minor or trivial" differences and just rehashes the same old claimed similarities from the Second Amended Complaint ("SAC") as if they were never analyzed in the Motion. Left without any meaningful response, the conclusion of the Motion stands unopposed: Plaintiff's claim fails under every factor of the extrinsic test as a matter of law.

The Motion should be granted and the SAC dismissed with prejudice.

## II. THE COURT NEED ONLY REVIEW THE WORKS TO DECIDE SUBSTANTIAL SIMILARITY, NO EXPERT OR EXTRINSIC EVIDENCE IS NECESSARY

The bulk of the Opposition is devoted to convincing the Court that it needs all sorts of extraneous evidence and information to decide whether the works are substantially similar. Plaintiff hypothesizes about what evidence he "expects his experts to explain" and gins up a conspiracy theory that maybe a rogue defense lawyer "dictated" changes to *Fear the Walking Dead* to conceal Defendants' supposed infringement. Opp. 15:25-27, 18:16-18. None of Plaintiff's machinations prevent the Court from deciding substantial similarity now. Under the incorporation by reference doctrine, the Court can and should review the two works and decide whether the works are substantially similar under the extrinsic test factors. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("[T]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.") (citation omitted). Although the Skybound Defendants agree with the AMC Defendants that the Court can take judicial notice of generic elements common in creative expression, the Skybound Defendants did not ask that the Court consider anything other than the works themselves because nothing else is necessary to grant the Motion. *See Funky Films v. Time Warner Entm't*, 462 F.3d 1072, 1076 (9th Cir. 2006) (extrinsic test "may often be decided as a matter of law").

## III. A REVIEW OF THE WORKS DEMONSTRATES THAT THEY ARE NOT SUBSTANTIALLY SIMILAR

The bulk of Plaintiff's Opposition that addresses substantial similarity simply restates the alleged similarities in the SAC, despite the Motion's demonstration that Plaintiff's work is full of generic and unprotectable scenes-a-faire. Opp. 10:3-12:22. However, "[c]ourts are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Silas v. Home Box Office,*

*Inc.*, 201 F. Supp. 3d 1158, 1173 (C.D. Cal. 2016), aff'd, 713 F. App'x 626 (9th Cir. 2018) (citations and modifications omitted). Instead, a review of the "objective details of the works," as provided in the Motion, is exactly what is called for under the extrinsic test. *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("The extrinsic test for similarity of ideas looks beyond the vague, abstracted idea of a general plot and instead 'focuses on . . . the objective details of the works . . . .'") (citation omitted).[1/] With respect to each and every factor in the extrinsic test, the Opposition fails to rebut the Motion's conclusion that the works are not substantially similar.

### A. Mood, Dialogue, Pace, and Theme

Plaintiff essentially abandons any attempt at claiming that the mood, dialogue, pace, and theme factors favor a finding of substantial similarity. After reviewing the works as a whole, it is obvious why. *Dead Ahead* is a gothic horror story told in melodramatic tones by a first-person narrator and depicted through nearly psychedelic drawings of incessant run-ins with zombies. In contrast, *Fear the Walking Dead* is a realistic, character-driven story told from an omniscient perspective. Although zombie attacks are a recurring feature on the show, there are long stretches without zombies where the drama of the show comes from the tension between the human characters. Accordingly, it is no surprise that Plaintiff does not address the differences in mood identified in the Motion, abandons his contention that the pacing of the two works is similar, and is unable to identify a single example of shared dialogue. Motion 18:2-

---

[1/]   On this point, Plaintiff's claim that the Motion's careful analysis does not "balanc[e] the need to protect the labors of authors with the desire to assure free access to ideas" (Opp. 13:16-19), gets it exactly backward. Plaintiff is the one trying to prevent others from telling a story about "zombies on the high seas" and depicting pictures of boats in water near the sun or moon. *See* Opp. 18:2-3. If anyone is guilty of improperly tilting the balance between freedom of expression and copyright protection, it is Plaintiff.

3                                                                                      Reply iso Mot'n to Dismiss

19:21.[2/]

Similarly, Plaintiff provides no authority for the proposition that *Dead Ahead*'s stock themes are protectable in any respect. Zombie stories necessarily involve life and death scenarios and existential threats, so Plaintiff's claimed shared themes of "fear and loathing," "God, the afterlife, damnation and salvation," "resilience in the face of danger," and "the meaning of life" are far too generic to be considered meaningful. The Opposition also totally fails to acknowledge that *Fear the Walking Dead* includes significant themes that are not present in *Dead Ahead*.

The mood, dialogue, pace, and theme factors all weigh heavily in Defendants' favor.

**B.    Setting**

Plaintiff also barely touches on the supposed setting similarities and the few points made by Plaintiff are easily dispatched.

First, Plaintiff complains that Defendants' analysis of the distinctions between the "skull and boat" images was too detailed (Motion 14:15-25) and now contends that Defendants also copied the "sunset coloration and reflection in the water" from Plaintiff's comic book. Opp. 17:19-18:9. Plaintiff strains credulity by contending that he is entitled to copyright protection for his stock depictions of a sunset and reflection in the water but, in any event, there are meaningful differences on these new points. The reflection in the *Dead Ahead* image is obscured by a swirling tide, unlike the clear and unobstructed reflection in the *Fear the Walking Dead* image. The sunset coloration is also different. In *Fear the Walking Dead*, the sun radiates bright yellow which fades to brown. In *Dead Ahead*, the moon does not put off any light and the color of the sky transitions horizontally from dark purple to orange. *See* SAC 8:1-27.

---

[2/]    To the extent Plaintiff is asserting that the scattered quotes in Exhibit A to the Givens declaration constitute dialogue similarities, Plaintiff is incorrect. None of the dialogue quoted by Plaintiff discloses a single shared phrase, let alone the required "extended similarity." *Olson v. Nat'l Broadcasting Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).

The images of the nautical setting are neither distinctive enough to warrant copyright protection nor substantially similar.

Second, Plaintiff attempts to sidestep that there are different geographical settings at the beginning of the works (Los Angeles in *Fear the Walking Dead* and Ensenada, Mexico in *Dead Ahead*), but those differences are meaningful.  Needless to say, Los Angeles is not Ensenada, they are located in different countries.  These differences in location also figure into both stories.  In *Fear the Walking Dead*, the survivors leave from Strand's beach side mansion in Los Angeles and board Strand's yacht, and Strand uses the fact that he saved the group to assert his power in making decisions for the group (for instance, refusing to pick up other survivors, despite the group's protests).  In *Dead Ahead*, Captain Jack's first reaction upon hearing the news of the zombie attack is to head back to port in Ensenada, Mexico where he is stopped by the Mexican navy, which forces the fishing boat back out to sea for the survivors' safety.  The geographic settings are materially distinct.

Finally, the Motion noted that there were major differences in the settings of the two works, which Plaintiff does not dispute, including that:  the boats in both works are nothing alike, the cruise ship in *Dead Ahead* is not a resort hotel like in *Fear the Walking Dead*, and the settings where the survivors look for supplies are divergent. Motion 15:6-11, 16:10-22 & n.8.

Thus, the setting factor also strongly favors Defendants.

**C.     Characters**

Plaintiff makes a minor attempt at salvaging the character factor of the extrinsic test, but his arguments fail for numerous reasons.

Most importantly, unlike *Fear the Walking Dead*'s exhaustive approach to character development (Motion 11:19-12:1), there is almost no character development in *Dead Ahead*.  For example, Plaintiff continues to insist that the Emile character is protectable even though the depiction is so lacking in distinctiveness that it changes partway through *Dead Ahead*.  Motion 13:16-22.  Plaintiff offers no explanation as to

why this character, or any of the others are entitled to any, let alone significant, copyright protection.  Motion 11:4-18; *see Silas*, 201 F. Supp. 3d at 1177 (to receive copyright protection, characters must (1) have "physical as well as conceptual qualities," (2) be "sufficiently delineated," and (3) be "especially distinctive").  *Dead Ahead*'s stock characters are too generic to be protectable.

Plaintiff also tries to limit the Court's review, claiming that the Court should consider only those parts of *Fear the Walking Dead* involving the yacht.  Opp. 13:24-14:12.  Plaintiff does not want the Court to view other episodes because they demonstrate that the characters are different.  However, the characters in *Fear the Walking Dead* do not exist in a vacuum confined by the parts of the story on the yacht, they evolve over the course of the entire show.  For example, several characters have back stories developed throughout the show that distinguish them from any of the characters in *Dead Ahead* (*see* Motion 4:1-26, 11:22-28), and that distinguishing information is pertinent to the Court's analysis of whether the characters are substantially similar.  *See Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1164 (C.D. Cal. 2015), aff'd 690 F. App'x 519 (9th Cir. 2017) ("In determining whether characters are similar, a court looks at the totality of the characters' attributes and traits . . . .") (citations and modifications omitted); *Silas*, 201 F. Supp. 3d at 1179 (noting difference where one character is depicted dating a football player but the other divorced a football player "before [the work's] story began").

What little Plaintiff does say about the supposedly similar characters is demonstrably incorrect.  Plaintiff ignores that the two "Red" characters have several noticeable differences, including that in *Fear the Walking Dead* "Red" is a threatening interloper with long straight hair, while in *Dead Ahead* "Red" is one of the survivors on Captain Jack's boat, not a pirate, and has short curly hair.  *Silas*, 201 F. Supp. 3d at 1177 (stating that "courts require a very high degree of similarity between characters" and will "not find characters to be substantially similar when two characters have noticeable differences").

Plaintiff also stunningly claims that the *Fear the Walking Dead* characters identified in the Motion as having no parallel in *Dead Ahead* (Motion 14:6-24) are "almost entirely secondary or tertiary characters outside the pertinent narrative." Opp. 16:4-6. Plaintiff apparently forgot that **he included pictures of these very characters on the yacht in his SAC!** SAC 10:15-24, 11:10-17, 13:4-9, 13:19-26, 14:11-17, 20:1-22.[3]

The Motion also noted numerous differences between other characters and the Opposition offers no response. For example, Plaintiff:

- completely abandons the claim that pirates are a source of similarity (Motion 13:23-14:5),
- disregards that the *Fear the Walking Dead* characters are not a "ragtag" group as Plaintiff claims but actually share close familial bonds (Motion 14 n.7), and
- ignores the differences in appearance between the characters Plaintiff contends are the main protagonists, Captain Jack and Travis Manawa (Motion 12:9-21).[4]

Plaintiff's inability to respond to any of these major issues demonstrates that Plaintiff cannot come close to showing substantial similarity.

The character factor also strongly supports a finding of no substantial similarity.

### D. Plot and Sequence of Events

At the heart of Plaintiff's argument as to the plot and sequence of events factor

---

[3] The absence of parallel characters is significant, despite Plaintiff's assertions to the contrary (Opp. 16:3-14). *See Capcom Co. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *9 (N.D. Cal. Oct. 20, 2008) ("[P]laintiff cannot merely sweep aside the presence of so many other varied characters who appear in the differing spots, and whose attributes and demeanor bear no similarity with respect to one another.") (citation omitted); *Funky Films*, 462 F.3d at 1079 (noting that "one of the central characters" was "[c]ompletely missing" and other "[a]dditional characters . . . have no counterpart . . . .").

[4] It is still unclear why Plaintiff continues to assert that Captain Jack is an educator. Opp. 12:5-6. There is simply no reference to it in *Dead Ahead*. Motion 12:8-13.

(and really of Plaintiff's entire case) is Plaintiff's insistence that the works share a similar overarching premise, that a group of survivors escape a zombie apocalypse on a boat. Opp. 8:12-15. This supposed plot similarity fails to pass muster under the extrinsic test because "[g]eneral plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Zella*, 529 F. Supp. 2d at 1133-34 (citations omitted). Although Plaintiff does his best to describe the general plot idea as specifically as possible, that does not change the fact that the plots of the two works share nothing more than a "gruesome similarity" as zombie stories where the characters are on boats. Works sharing far more distinctive plot ideas than the works here were deemed not substantially similar. *See Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (finding no substantial similarity even though both works' plots shared "gruesome similarity" because they feature "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and follow "a young professional who courageously investigates, and finally exposes, the criminal organization").

Many of the other alleged plot similarities are unprotectable scenes-a-faire that flow naturally from the basic plot idea of escaping zombies by boat, for example, looking at a map, fishing, communicating by radio, and surveying the sea with binoculars. *See, e.g.,* Opp. 10:7-11, 16-18. Such random lists of supposed similarities are insufficient to satisfy the extrinsic test. *Kouf v. Walt Disney Pictures & Telev.*, 16 F.3d 1042, 1045 (9th Cir. 1994) ("[W]e are equally unimpressed by [plaintiff's] compilation of random similarities scattered throughout the works.") (modifications and quotations omitted).

As in the character prong, Plaintiff hopes to minimize the holes in his argument as to the plot factor by suggesting that the Court should limit its review to only certain episodes of *Fear the Walking Dead* selected by Plaintiff. Opp. 14:6-18. The Court should not do so. All episodes of *Fear the Walking Dead* are pertinent to the "sequence of events" at issue because they show the *Fear the Walking Dead* plot takes

different turns that have no comparison in *Dead Ahead*. *See* Motion at 8:18-28. That different events occur in *Fear the Walking Dead* between the parts of the story that Plaintiff claims are similar is undeniably pertinent to the Court's analysis of whether the plots and sequence of events are substantially similar. *See Funky Films*, 462 F.3d at 1078 n.3 (discussing plot dissimilarities and noting that there were "a number of scenes with no equivalent").[5]

Plaintiff's Opposition also continues to attempt to find new supposed similarities. Plaintiff now claims that both works feature a supply run where one survivor wanders away from the group, there is a zombie attack, and the boat's engines are fixed at the last second. Opp. 10:25-11:3. For starters, that survivors on a boat need to go to land for supplies flows naturally from the premise of being on a boat, and that a zombie attack occurs during the supply run is an unprotectable scenes-a-faire in zombie stories. Moreover, these sequences are nothing alike. In *Dead Ahead*, Chapman (the former financier) finds a case of beer while looking for supplies in an abandoned town, zombies attack the survivors, and while the others fight the zombies, Captain Jack boards a new tug boat that immediately starts up. In *Fear the Walking Dead*, the survivors scavenge the wreckage of a plane crash on a beach, Chris (a troubled teenager) kills a plane crash survivor, and he and the others survivors are saved when Nick discovers that the zombies cannot see him if he smears zombie blood on himself. When the group returns to the yacht after the attack, Travis has finally

---

[5] These numerous plot differences also demonstrate that *Wilson v. Walt Disney Co.*, No. 14-CV-01441-VC, 2014 WL 4477391 (N.D. Cal. July 30, 2014), cited by Plaintiff, actually supports Defendants. Opp. 16:23-17:6. In *Wilson*, a trailer for the movie *Frozen* and a short film were substantially similar because the works shared the "concrete elements that make up the **total sequence of events**" and a "detailed sequence of events **from the start to the finish** of the works." *Id.* at *1 (quotations omitted, emphasis supplied). Unlike in *Wilson*, in this case, the "total" sequence of events is not similar from "start to finish," but instead the concrete plot elements identified by Plaintiff are in fact rife with differences.

finished hours of work to remove a zombie that was caught in an intake tube on the yacht.  (Ep. 3).

The Opposition also claims that these supply run sequences result in a conversation about the growing discord and distrust in the group and a feeling that the survivors are "aimless, unsure of where [their] next destination will be."  Opp. 11:4-6. Plaintiff again misses the mark.  Discord and distrust are a constant feature of the relationships in *Fear the Walking Dead*, but in *Dead Ahead* the survivors almost always agree or follow Captain Jack's instructions with little resistance.  Unlike in *Dead Ahead*, the survivors in *Fear the Walking Dead* are not unsure of their next destination but instead they finally learn that Strand is taking them to the estate in Baja owned by his lover, a secret Strand had been keeping from the others.  (Ep. 3). Plaintiff's supply run sequence is not protectable and, in any event, the supply run sequences are not substantially similar.

Finally, the Motion comprehensively reviewed the plot points that Plaintiff contended were similar and noted numerous distinctions.  Motion 6:22-10:11.  Plaintiff sweeps aside that analysis as "a series of minor or trivial differences" (Opp. 15:15-16), but the number and extent of those differences are far from minor or trivial.  For example, in the face of Defendants' analysis to the contrary, Plaintiff's Opposition abandons his claims in the SAC that the events involving pirates, the scenes involving a pier, and the use of a boat propeller to kill zombies in both works are sources of similarity.  SAC 16:1-3, 16:9-11, 14:20-15:28, 18:23-26.  If the differences identified in the Motion were as minor or trivial as Plaintiff claims, then he would not have abandoned those claimed similarities.

Therefore, the plots and sequences of events are not substantially similar.

*   *   *

In sum, the works are too different in too many respects.  None of the extrinsic test factors support a finding of substantial similarity.

## IV. CONCLUSION

The Motion should be granted. *Dead Ahead* and *Fear the Walking Dead* are not substantially similar as a matter of law. Plaintiff's Second Amended Complaint should be dismissed with prejudice and without leave to amend.

Dated: December 14, 2018

GRODSKY & OLECKI LLP
Allen B. Grodsky
Courtney L. Puritsky
Tim B. Henderson

By:     /s/ Tim B. Henderson
             Tim B. Henderson

Attorneys for Defendants Skybound Productions, Inc., Circle of Confusion Productions, LLC, New Circle of Confusion Productions, Inc., Robert Kirkman, LLC, Robert Kirkman, and David Alpert