D<small>AVIS</small> W<small>RIGHT</small> T<small>REMAINE</small> LLP
865 S. F<small>IGUEROA</small> S<small>T</small>.
S<small>UITE</small> 2400
L<small>OS</small> A<small>NGELES</small>, C<small>ALIFORNIA</small> 90017-2566
T<small>ELEPHONE</small> (213) 633-6800
F<small>AX</small> (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
MEGAN LOLLAR (State Bar No. 313268)
  meganlollar@dwt.com

Attorneys for Defendants
AMC NETWORKS INC., AMC FILM HOLDINGS LLC, AMC NETWORK ENTERTAINMENT LLC, AMC TV STUDIOS LLC, and VALHALLA ENTERTAINMENT, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN WILLIAM SMITH, JR., a/k/a MEL SMITH, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>AMC NETWORKS, INC., a Delaware corporation; AMC FILM HOLDINGS, LLC, a Delaware limited liability company; AMC NETWORK ENTERTAINMENT, LLC, a Delaware limited liability company, d/b/a AMC a/k/a American Movie Classics; AMC TV STUDIOS, LLC, a Delaware limited liability company, f/k/a AMC Television Productions LLC; SKYBOUND PRODUCTIONS, INC., a California corporation; CIRCLE OF CONFUSION PRODUCTIONS, LLC, a California limited liability company; NEW CIRCLE OF CONFUSION PRODUCTIONS, LLC, a California limited liability company; VALHALLA ENTERTAINMENT, INC., f/k/a VALHALLA MOTION PICTURES, INC., a California corporation; ROBERT KIRKMAN, LLC, a Kentucky limited liability company; ROBERT KIRKMAN, an individual; DAVID ALPERT, an individual,<br><br>          Defendants. | Case No. 5:18-cv-03803-LHK<br><br>**DEFENDANTS AMC NETWORKS INC., AMC FILM HOLDINGS LLC, AMC NETWORK ENTERTAINMENT LLC, AMC TV STUDIOS LLC, AND VALHALLA ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:          January 17, 2019<br>Time:         1:30 p.m.<br>Courtroom: 8 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................................ 1

II.    THE COURT MAY ASSESS SUBSTANTIAL SIMILARITY ON THIS MOTION. ......... 1

III.   THE WORKS ARE NOT SUBSTANTIALLY SIMILAR. ................................................. 4

       A.    Plaintiff's Rehashed Allegations Do Not Meaningfully Contest the Lack of
             Substantial Similarity in the Works' Protectable Elements. ..................................... 4

       B.    The Court May Consider the Works' Dissimilarities As Well. ................................ 6

       C.    Plaintiff's Attempt to Downplay Cases Finding No Substantial Similarity Is
             Futile. ........................................................................................................................ 7

       D.    The Numerous Differences Between the Works Do Not Support a Finding of
             Substantial Similarity. .............................................................................................. 9

IV.    PLANTIFF'S BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS. ......................... 9

V.     CONCLUSION .................................................................................................................... 10

VI.    EVIDENTIARY OBJECTIONS .......................................................................................... 10

i

REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 9

*Basile v. Warner Bros. Entm't*,
    2016 WL 5867432 (C.D. Cal. Jan. 4, 2016) ............................................................................ 7

*Benay v. Warner Bros. Entm't*,
    607 F.3d 620 (9th Cir. 2010) ............................................................................................. 2, 8

*Blizzard Entm't v. Lilith Games (Shanghai) Co.*,
    2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) ......................................................................... 6

*Capcom v. MKR Group*,
    2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .................................................................... 3, 8

*Cline v. Reetz-Laiolo*,
    2018 WL 3159248 (N.D. Cal. June 28, 2018) ....................................................................... 2

*DuckHole Inc. v. NBC Universal Media LLC*,
    2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ..................................................................... 2, 3

*Fillmore v. Blumhouse Prods.*,
    2017 WL 4708018 (C.D. Cal. July 7, 2017) ...................................................................... 2, 3

*Funky Films, Inc. v. Time Warner Entm't Co.*,
    462 F.3d 1072 (9th Cir. 2006) ................................................................................. 1, 2, 7, 8

*Gallagher v. Lions Gate Entm't Inc.*,
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ..................................................................... 7

*Gorski v. The Gymboree Corp.*,
    2014 WL 3533324 (N.D. Cal. July 16, 2014) (Koh, J.) .......................................................... 1

*Heusey v. Emmerich*,
    2015 WL 12765115 (C.D. Cal. Apr. 9, 2015), *aff'd* 2017 WL 2839176 (9th
    Cir. 2017) ............................................................................................................................... 2

*Hogan v. DC Comics*,
    48 F. Supp. 2d 298 (S.D.N.Y. Jan. 26, 1999) ........................................................................ 5

*Identity Arts v. Best Buy Enter. Servs.*,
    2007 WL 1149155 (N.D. Cal. Apr. 18, 2017) ....................................................................... 7

*Nationwide Transport Fin. v. Cass Information Systems, Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ............................................................................................. 11

ii
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Case 5:18-cv-03803-LHK   Document 73   Filed 12/14/18   Page 4 of 15

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ............................................................................................. 7

*Printex Indus. v. Aeropostale*,
    676 F.3d 841 (9th Cir. 2012) ............................................................................................... 6

*Sarsfield v. Cty. of San Benito*,
    2007 WL 3342726 (N.D. Cal. Nov. 9, 2007) ..................................................................... 10

*See v. Durang*,
    711 F.2d 141, 142 (9th Cir. 1983) ....................................................................................... 9

*Silas v. Home Box Office, Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd* 713 Fed. Appx. 626 (9th Cir. 2018) ................................................................................................................................ 2

*Skidmore v. Led Zeppelin*,
    905 F.3d 1116 (9th Cir. 2018) ............................................................................................. 3

*Sugarfina v. Sweet Pete's*,
    2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) .................................................................... 9

*Universal Pictures v. Harold Lloyd Corp.*,
    162 F.2d 354 (9th Cir. 1947) ............................................................................................... 6

*Wild v. NBC Universal, Inc.*,
    2011 WL 13272427 (C.D. Cal. June 28, 2011) ................................................................... 7

*Wilson v. The Walt Disney Co.*,
    2014 WL 4477391 (N.D. Cal. July 30, 2014) ..................................................................... 8

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................................... 2, 3

iii
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

I. INTRODUCTION

There is no dispute that this Court may consider and compare the *Dead Ahead* comic books (the "Comic Books") and the second season of *Fear the Walking Dead* (the "Series"). While the works share a general premise – humans struggling to survive a zombie apocalypse by escaping to the ocean – the works are highly dissimilar in their concrete, protectable elements. Although the Court must filter out unprotectable elements before assessing similarity, Plaintiff repeatedly argues that by doing so, the Court would improperly consider extrinsic evidence. Plaintiff is wrong. While this Court does not need to consider anything other than the two works to conclude that they are not substantially similar, the Court may rely on the fact that most of the alleged similarities are generic elements featured in numerous other works, from *Jaws* to *The Walking Dead* comic books, to bolster its conclusion. In fact, courts routinely consider such elements in assessing substantial similarity at the pleading stage, and this Court should as well.

Beyond urging the Court to ignore the Ninth Circuit's mandate to filter out unprotectable elements, Plaintiff provides a half-hearted response to AMC and Valhalla's fifteen-page analysis of the "extrinsic test," mostly relying on rehashed allegations from the Second Amended Complaint (the "2AC"). Indeed, Plaintiff barely addresses AMC and Valhalla's arguments about the extensive differences between the works, his heavy reliance on unprotectable *scènes à faire*,[1] and his mischaracterizations of the alleged similarities. Despite Plaintiff's efforts to manufacture a copyright claim by relying on unprotectable elements and exaggerated purported similarities, "an actual reading [and viewing] of the two works reveals greater differences and few real similarities at the levels of plot, characters, theme, mood, pace, dialogue, or sequence of events." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077-1078 (9th Cir. 2006). Consequently, Plaintiff's claims fail as a matter of law and should be dismissed with prejudice.

II. **THE COURT MAY ASSESS SUBSTANTIAL SIMILARITY ON THIS MOTION.**

Despite Plaintiff's argument that "the matter of substantial similarity can only be decided on a factual record," Opp. at 1, *numerous* courts have held to the contrary. *See e.g.*, *Gorski v.*

---

[1] Plaintiff does not even mention the concept of *scènes à faire* in his opposition despite the extensive discussion of such elements in the motion to dismiss.

1
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*The Gymboree Corp.*, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) (Koh, J.) (granting motion to dismiss copyright claim for lack of substantial similarity); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) (same); *Cline v. Reetz-Laiolo*, 2018 WL 3159248, at *26 (N.D. Cal. June 28, 2018) (same); *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1171 (C.D. Cal. 2016), *aff'd* 713 Fed. Appx. 626 (9th Cir. 2018) (same); *Heusey v. Emmerich*, 2015 WL 12765115, at *3 (C.D. Cal. Apr. 9, 2015) (same), *aff'd* 2017 WL 2839176 (9th Cir. 2017); *DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797279, at *9 (C.D. Cal. Sept. 6, 2013) (same).[2]

In assessing substantial similarity, courts are not limited to reviewing the works at issue, but may also consider "generic elements of creative works," which are properly the subject of judicial notice. *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128, 1129 (C.D. Cal. 2007) (taking judicial notice that television shows commonly feature a host, guest celebrities, interviews, and a cooking segment); *DuckHole*, 2013 WL 5797279, at *4 (taking judicial notice of generic elements of veterinary-themed sitcoms, including (1) settings of an operating room, exam room, and lobby; (2) pets; (3) a comedic tone; and (4) romantic relationships); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (taking judicial notice that the "possibility of resurrection is a common element in religious works," "[b]ringing the dead back to life is a common element in horror, fantasy and science fiction books and movies," and "[d]ream sequences are a common narrative device in works of fiction"). *See also* Mot. at 5-6.

Plaintiff's argument that the request for judicial notice concedes that extrinsic evidence is needed, Opp. at 7, is unpersuasive. Indeed, the case law demonstrates that courts may and often do take judicial notice of generic elements before assessing substantial similarity, as in *Zella*,

---

[2] Confusingly, Plaintiff asserts that "[r]esearch fails to disclose a single case where the Ninth Circuit affirmed in a published decision the dismissal on summary judgment (let alone a Rule 12 motion) of a case alleging infringement of a literary work like DEAD AHEAD without consideration of such evidence when proffered." Opp. at 6. While the meaning of this sentence is uncertain, one thing is clear: the Ninth Circuit affirmed dismissals for lack of substantial similarity in *Silas* (comparing treatment and screenplay to television series) and *Heusey* (comparing screenplay to film), and affirmed summary judgment for defendants in *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 629 (9th Cir. 2010) (comparing screenplay to film) and *Funky Films,* 462 F.3d at 1082 (comparing screenplay to television series), among others.

2
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*DuckHole*, and *Fillmore*, which all were discussed in the motion to dismiss. These cases (and many others) also refute Plaintiff's argument that the Court "must" convert the motion to dismiss into a motion for summary judgment if it considers the generic elements described in the request for judicial notice. *See* Opp. at 5-6. Even worse than ignoring these authorities, Plaintiff then relies on that ignorance to argue that AMC and Valhalla "opened the door" to expert testimony (Opp. at 6), which he improperly submits in opposition to the motion.[3]

Lastly, Plaintiff mischaracterizes the request for judicial notice as a "backdoor proffer," complaining that AMC and Valhalla requested judicial notice of common elements in film and television, but not of the numerous works containing those elements. Opp at 5. But courts may determine which elements they must "filter out" as unprotectable without taking judicial notice of all of the underlying works that feature such elements. In *Capcom v. MKR Group*, 2008 WL 4661479, at *4, 7 (N.D. Cal. Oct. 20, 2008), for example, the court expressly rejected the request to take judicial notice of numerous zombie movies and video games, but found no substantial similarity as a matter of law because "[n]early all of the similarities between the two works … constitute nothing more than a collection of unprotectable elements." *See also Zella*, 529 F. Supp. 2d at 1129, 1135 (rejecting request to take judicial notice of specific shows, but taking judicial notice of generic elements and dismissing copyright claim).[4]

Here, the Court may take judicial notice of the works at issue *and* the generic elements described in the request for judicial notice. Tellingly, beyond his misguided argument that the Court may not consider such elements, Plaintiff does not meaningfully challenge that they are, in fact, commonplace, or that he cannot own the concept of "zombies at sea" or the elements that reasonably flow from that concept. This is particularly true as Plaintiff did not even originate the

---

[3] AMC and Valhalla have objected to Plaintiff's counsel's declaration, which should be stricken. *See* Section VI.

[4] While Plaintiff also argues that *Skidmore v. Led Zeppelin*, 905 F.3d 1116 (9th Cir. 2018), is "instructive" to his argument that expert testimony is required to assess substantial similarity, Opp. at 7, it is unclear how *Skidmore*'s decision regarding jury instructions about the selection and arrangement of songs has any relevance here. Plaintiff observes that "an arrangement or sequence of unprotected elements can constitute the artistic expression of an idea," Opp. at 8, but even the arrangement and sequence of the generic elements found in the works at issue here are highly dissimilar.

3
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

concept of "zombies at sea," as he had alleged. *See* Mot. at 14 (detailing earlier works featuring zombies in the ocean). As explained in the motion, once the numerous unprotectable elements are filtered out, the remaining elements are highly dissimilar.

### III.   THE WORKS ARE NOT SUBSTANTIALLY SIMILAR.

#### A.   Plaintiff's Rehashed Allegations Do Not Meaningfully Contest the Lack of Substantial Similarity in the Works' Protectable Elements.

Curiously, Plaintiff contends that "Defendants do not attack the baseline legal theory of Plaintiff's copyright infringement claim." Opp. at 3. In fact, AMC and Valhalla have demonstrated that Plaintiff's copyright claim fails as a matter of law by establishing that each of Plaintiff's alleged similarities are not actually similar, flow from the general premise of "zombies at sea," or are generic elements found in numerous other works in similar genres. *See* Mot. at 10-24. In response, Plaintiff rehashes allegations from the 2AC, ignores most of the motion's detailed discussion of the alleged similarities, and refuses to acknowledge the concept of *scènes à faire*. Opp. at 10-12. For example, AMC and Valhalla's motion spends eight pages detailing eleven alleged similarities with respect to the works' plots and sequences of events (Mot. at 10-17), but Plaintiff merely recites his allegations without responding to almost any of the points raised in the motion (Opp. at 10-11). In particular, Plaintiff does not respond to AMC and Valhalla's extensive discussion about numerous dissimilarities in the plots of the works, including the groups of individuals featured in the works, the boats, the roles of the military, the search for supplies and refuge, the "pirates," the references to an elevator, and the uses of fire or an explosion, among others. Nor does Plaintiff even attempt to argue that these elements are anything other than generic. Plaintiff also recites his allegations regarding setting, theme, and mood without responding to any points raised in the motion, and does not address the differences in dialogue or pace that were detailed in the motion.

Similarly, Plaintiff all but ignores the motion's analysis of the characters in each of the works and doubles down on his mischaracterizations and exaggerations. *See* Mot. at 21-24; Opp. at 12. He ignores the fact that it is unclear whether the Comic Books have eight, nine, or ten characters (as opposed to the eight characters that Plaintiff contends), and does not address the

4

REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  numerous differences between the relationships among the characters or between their physical
2  appearances, backstories, or involvement in the plots of the works.  For example, he fails to
3  explain how a fishing-boat captain and high-school English teacher can be grouped together as
4  "male educators," and, regardless, ignores the fact that the male-educator-thrust-into-a-
5  leadership-role character is found in numerous works.

6  Plaintiff responds to only one point about the characters, insisting that both works feature
7  "virtually identical" female characters named "Red."  Opp. At 12.  In the Comic Books,
8  however, "Red" is a central character who appears in all three issues.  In the Series, on the other
9  hand, "Red" is killed within two minutes of first appearing on screen (*see* Ex. 6, Clip 23
10 (Episode 4, 38:20-40:47)), and is referred to that name only once (in another episode after she
11 has died, which is why counsel missed the reference).  *See* Ex. 5, Episode 5, 30:07-13.
12 Moreover, the characters have different appearances, ages, and roles, not to mention that "Red"
13 is a common nickname for anyone with red hair.  *See, e.g.*, *Hogan v. DC Comics*, 48 F. Supp. 2d
14 298, 311-312 (S.D.N.Y. Jan. 26, 1999) (finding that two works were not substantially similar
15 despite the main character in each being named Nicholas Gaunt, half-vampire, half-human, white
16 male in early twenties with dark messy hair and pale skin).

17 Plaintiff raises two more alleged similarities in his opposition.  First, he argues that a
18 character named Beau Chapman from the Comic Books is a "wealthy financier" and a character
19 named Victor Strand from the Series is a "wealthy businessman."  Opp. at 12.  Beyond this
20 superficial similarity, however, the two characters could not be more different.  Chapman is a
21 non-descript, headband-sporting Caucasian crew member, who has almost no involvement in the
22 events in the Comic Books, while Strand, a central character in the Series, is an African-
23 American man who directs the *Abigail* along its course to the luxury compound to reunite with
24 his dying lover, the backstory of which is shown through numerous flashbacks, and drives the
25 plot of at least half of the Series.  Second, Plaintiff argues that both works feature a
26 malfunctioning boat engine.  Opp. at 10.  Despite the fact that a stalling or malfunctioning boat
27 engine is a generic element found in countless works that take place at sea, in the Comic Books,
28 the engine malfunctions as the result of a storm (causing irreparable damage) (Ex. 4, Graphic

5

REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Novel at 13-14), whereas in the Series, it is the result of a zombie being sucked into the pipes
2  (which the characters fix).  *See, e.g.*, Ex. 5, Episode 3, 6:14-9:43; 33:47-34:09.  Plaintiff
3  otherwise repeats claims from the 2AC without addressing the motion's many distinctions, or
4  adds minor details that do not give rise to a finding of substantial similarity, like elaborating on a
5  beach supply trip or explaining that Emile from the Comic Books and Daniel from the Series are
6  both Hispanic and once shouted insults in Spanish.

7  Overall, Plaintiff's failure to meaningfully respond to the detailed examination of each
8  element in the extrinsic test is nothing short of a concession, both as to the numerous
9  dissimilarities between the works and his heavy reliance on unprotectable generic elements.

10  **B.     The Court May Consider the Works' Dissimilarities As Well.**

11  In an attempt to prevent the Court from considering the numerous dissimilarities between
12  the works, Plaintiff contends that because he alleged that "portions" of the second season of the
13  Series infringed on his copyright, this Court cannot consider episodes beyond the ones that he
14  identified in his opposition.  Opp. at 14-15.  In other words, Plaintiff argues that the Court may
15  consider only the episodes that Plaintiff says to consider, a nonsensical and legally unsupportable
16  proposition.  Nor does the case law support Plaintiff's contention that the numerous
17  dissimilarities between the Comic Books and the Series are irrelevant.  Opp. at 13.  *Printex*
18  *Indus. v. Aeropostale*, 676 F.3d 841, 851 (9th Cir. 2012), for example, is readily distinguishable
19  because the court found "objective similarities in protectible elements" of clothing designs, and
20  declined to hold that other differences between the designs necessarily meant they lacked
21  substantial similarity.  In *Blizzard Entm't v. Lilith Games (Shanghai) Co.*, 2018 WL 1242053, at
22  *6 (N.D. Cal. Mar. 8, 2018), the plaintiffs alleged that two characters in defendants' video game
23  infringed characters from plaintiffs' games, and the fact that other of defendants' characters did
24  not infringe did not somehow negate the infringement.  And in *Universal Pictures v. Harold*
25  *Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir. 1947), the court found "57 consecutive scenes lifted
26  almost bodily" from the plaintiff's work and simply explained that the "whole picture need not

27
28

6
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

be copied to constitute infringement."[5]  The principle reflected in these cases is not, as Plaintiff contends, that courts cannot consider dissimilarities between works or that such dissimilarities are irrelevant, but rather that the existence of dissimilarities does not mandate dismissal if there otherwise is substantial similarity of protectable expression.

Conspicuously, Plaintiff overlooks the fact that courts routinely assess dissimilarities between works as part of the substantial-similarity analysis.  *See, e.g., Funky Films*, 462 F.3d 1072, 1078 (9th Cir. 2006) (examining the "significant differences" between the works at issue); *Gallagher v. Lions Gate Entm't Inc.*, 2015 WL 12481504, at *6 (C.D. Cal. Sept. 11, 2015) (analyzing "unreciprocated plot elements"); *Basile v. Warner Bros. Entm't*, 2016 WL 5867432, at *8 (C.D. Cal. Jan. 4, 2016) ("[T]he presence of characters in one work without counterparts in the other weighs in favor of finding that the works are not substantially similar"); *Identity Arts v. Best Buy Enter. Servs.*, 2007 WL 1149155, at *15 (N.D. Cal. Apr. 18, 2017) (explaining that "plaintiff cannot merely sweep aside the presence of so many other varied characters who appear in the differing spots, and whose attributes and demeanor bear no similarity with one another"); *Wild v. NBC Universal, Inc.*, 2011 WL 13272427, at *16 (C.D. Cal. June 28, 2011) ("The almost complete lack of parallel characters strongly suggests, without any further analysis, that the works lack substantial similarity.").  Accordingly, this Court can – and should – examine not just the alleged similarities, but the numerous dissimilarities between the works.[6]

C. **Plaintiff's Attempt to Downplay Cases Finding No Substantial Similarity Is Futile.**

AMC and Valhalla have cited numerous cases involving works with seemingly significant similarities where the court nonetheless found no substantial similarity as a matter of

---

[5] In *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004), the court addressed the legal concept of "fragmented literal similarity" in the context of music sampling, which has no relevance to this case.

[6] Notably, the 2AC expressly refers to storylines established in the first season of the Series (for example, the role of the government and military in response to the zombies) and those events taking place in the third season of the Series ("Strand sets the Abigail on fire in an attempt to destroy the zombies," as addressed in Mot. at 17 n.16).  In addition, certain elements of the Series, particularly plotlines and characters, necessarily depend on story arcs and character development that occurred before the specific episodes that Plaintiff would like to focus on.

7
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

law. *See* Mot. at 7-10. Plaintiff cannot distinguish these authorities. Addressing *Capcom v. MKR Group*, he asserts that the similarities between the works were "exceedingly few and weak – for example, a helicopter landing; a setting in a mall; an African-American man; and a zombie wearing plaid and covered in blood." Opp. at 8. In reality, the works in *Capcom* had extensive similarities, including that they were "set in a bi-level shopping mall," "the mall has a gun shop, in which action takes place," "the mall is located in a rural area with the National Guard patrolling its environs," the plots "are set in motion by a helicopter that takes the lead characters to a mall besieged by zombies," "both works feature … tough, cynical journalists, with short brown hair and leather jackets, as a lead male character," and "both works feature the creative use of items such as propane tanks, chainsaws, and vehicles to kill zombies." *Id.* at *6. Despite all of these similarities, the *Capcom* court dismissed the copyright claim for lack of substantial similarity. *Id.* at *11.

As another example, Plaintiff argues that the similarities in *Funky Films* consisted of unprotectable plot ideas. Opp. at 7. But the *Funky Films* court identified *numerous* similarities and even noted that "[a]t first blush, these apparent similarities in plot appear significant." 462 F.3d at 1077-1078. The court ultimately found no substantial similarity as a matter of law because, like here, "an actual reading of the two works reveals greater, more significant differences, and few real similarities at the levels of plot, characters, themes, mood, pace, dialogue, or sequence of events." *Id.* at 1078. Similarly, in *Benay*, 607 F.3d at 625, the court identified the numerous similarities between the works – and stated that "on cursory review these similarities may appear substantial" – but still found no substantial similarity. *See* Mot. at 9-10.[7]

---

[7] Plaintiff attempts to analogize this lawsuit to *Wilson v. The Walt Disney Co.*, 2014 WL 4477391 (N.D. Cal. July 30, 2014), Opp. at 16-17, but the court in *Wilson* rejected the defendants' motion to dismiss because of specific, concrete similarities between the works' central characters and a highly similar sequence of events involving the loss and retrieval of a snowman's carrot nose on a frozen pond with other animals.

8
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As these cases demonstrate, courts do not allow copyright claims to proceed even where there are many similarities at "first blush" or on "cursory review," if, as here, the works lack substantial similarity in specific, concrete, and protectable elements.[8]

### D. The Numerous Differences Between the Works Do Not Support a Finding of Substantial Similarity.

As a last-ditch effort to avoid dismissal, Plaintiff contends that *differences* between the works actually support a finding of *similarity* because they might "reflect the infringer's intent to mask the theft of more meaningful elements of the prior work." Opp. at 17. He is mistaken. Even if Plaintiff had alleged facts to support such a theory, which he has not, the Ninth Circuit long has recognized the common-sense rule that "[c]opying deleted or so disguised as to be unrecognizable is not copying." *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983). The district-court case on which Plaintiff relies, *Sugarfina v. Sweet Pete's*, 2017 WL 4271133, at *7 (C.D. Cal. Sept. 25, 2017), found that the parties' product packaging was substantially similar and noted that in certain instances, superficial changes *may* be considered an attempt to disguise appropriation. The Comic Books and the Series are not substantially similar and their differences are anything but superficial.[9]

### IV. PLANTIFF'S BREACH OF FIDUCIARY DUTY CLAIM ALSO FAILS.

Plaintiff concedes that he lacks any "particulars of the who, what and when" of how AMC and Valhalla "provided Defendant Alpert with substantial material assistance [of] his fiduciary duty to Plaintiff." Opp. at 20. Plaintiff then openly acknowledges his intention to go on a fishing expedition to see if he can find any facts supporting his claim. *Id.* To survive a motion to dismiss, however, "a complaint must contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[8] Contrary to Plaintiff's suggestion (Opp. at 15), the fact that his work is a comic book and the Series is a television production does not reduce his burden on opposing this motion.

[9] Plaintiff also again mentions "competing 'skull and boat' images," Opp. at 17, but as explained in the motion, advertising for the Series has no relevance to whether the works themselves are substantially similar. Mot. at 19 n.18. In any event, the concept of a skull floating above the horizon is commonly used, and the specific ways in which AMC and Plaintiff expressed this concept differ significantly.

9

REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(2009) (emphasis added) (internal quotation marks omitted).  Plaintiff does not even *allege* that AMC or Valhalla knew about Alpert's purported fiduciary duty to Plaintiff or assisted in any purported breach of that duty, let alone provide any supporting facts.  Additionally, because the Series does not infringe any copyright in the Comic Books, AMC and Valhalla did not aid and abet any infringement.

## V.   CONCLUSION

Plaintiff has had three opportunities to state a valid claim against AMC and Valhalla and he has failed to do so.  Plaintiff simply does not own the concept of "zombies on the high seas," and should not be permitted to subject AMC and Valhalla to further litigation.  Accordingly, AMC and Valhalla respectfully request that this Court grant their motion to dismiss in its entirety, with prejudice.

## VI.   EVIDENTIARY OBJECTIONS

AMC and Valhalla object to the entirety of David M. Given's Counsel Declaration in Support of Plaintiff's Omnibus Opposition, Etc. (the "Counsel Declaration") and Exhibit A, which should be stricken in their entirety for the reasons set forth below:

**Objection No. 1**:  Paragraphs 2-6 and Exhibit A. In Paragraphs 2-6, the Counsel Declaration states that Plaintiff expects to retain experts to provide opinions on a variety of topics should this case survive dismissal, and states that these experts will provide opinions "which might include the preparation of a comprehensive concordance, comparing in detail the relevant works, identifying and confirming the originality of the pertinent protected elements of Plaintiff's work used in Defendants' work."  The declaration then attaches an example of such a "concordance" as Exhibit A.

- **Relevance**.  Plaintiff's counsel's personal opinions about potential expert testimony are irrelevant for purposes of AMC and Valhalla's motion to dismiss.  *See* Fed. R. Evid. 401, 402.

- **Improper Extrinsic Evidence**.  Plaintiff's counsel's personal opinions about potential expert testimony are inappropriate on a motion to dismiss.  *See* Fed. R. Civ. Pro. 12(b)(6); *Sarsfield v. Cty. of San Benito*, 2007 WL 3342726, at *2 (N.D. Cal. Nov. 9, 2007) ("On a

10
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable," along with materials incorporated by reference).

- **Improper Opinion and Legal Conclusion**. Plaintiff's counsel's personal opinions about potential expert testimony constitutes improper opinion and legal conclusions. *See* Fed. R. Evid. 701, 702; *Nationwide Transport Fin. v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058-1060 (9th Cir. 2008) (legal conclusions by lay witnesses are inadmissible; disallowing lay testimony about whether defendant's conduct violated the UCC).

- **Lack of Foundation**. Plaintiff's counsel fails to lay any foundation regarding his opinions or the purported "concordance." *See* Fed. R. Evid. 104(b), 901(a).

**Objection No. 2**: Paragraphs 7-8. In Paragraphs 7-8, the Counsel Declaration opines regarding additional topics upon which retained experts will purportedly testify.

- **Relevance**. Plaintiff's counsel's personal opinions about potential expert testimony are irrelevant for purposes of AMC and Valhalla's motion to dismiss. *See* Fed. R. Evid. 401, 402.

- **Lack of Foundation**. Plaintiff's counsel fails to lay any foundation regarding his opinions. *See* Fed. R. Evid. 104(b), 901(a).

- **Improper Opinion and Legal Conclusion**. Plaintiff's counsel's personal opinions about expert testimony constitutes improper opinion and legal conclusions. *See* Fed. R. Evid. 701, 702.

DATED: December 14, 2018

DAVIS WRIGHT TREMAINE LLP

By: _____/s/ Alonzo Wickers IV_____
       Alonzo Wickers IV

Attorneys for Defendants
AMC NETWORKS INC., AMC FILM HOLDINGS LLC, AMC NETWORK ENTERTAINMENT LLC, AMC TV STUDIOS LLC, and VALHALLA ENTERTAINMENT, INC.

11
REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 5:18-cv-03803-LHK
4814-6166-1569v.6 0094323-000044

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899