United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELVIN WILLIAM SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>AMC NETWORKS, INC., et al.,<br><br>    Defendants. | Case No. 18-CV-03803-LHK<br><br>**ORDER DENYING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 66, 67 |

Plaintiff Melvin Smith brings suit against Defendants and claims that Defendants infringed Plaintiff's copyright and that Defendants breached their fiduciary duties to Plaintiff. At the center of this dispute are two zombie-themed works: Plaintiff's comic book called *Dead Ahead* and Defendants' television series entitled *Fear the Walking Dead*. Plaintiff claims that *Fear the Walking Dead* infringed Plaintiff's copyright on *Dead Ahead*.

Before the Court is Defendants AMC Networks Inc., AMC Film Holdings LLC, AMC Network Entertainment LLC, AMC TV Studios LLC, and Valhalla Entertainment, Inc.'s (collectively, "AMC Defendants") motion to dismiss the second amended complaint. ECF No. 67.

Also before the Court is Defendants Skybound Productions, Inc., Circle of Confusion Productions, LLC, New Circle of Confusion Productions, Inc., Robert Kirkman, LLC, Robert

Kirkman, and David Alpert's (collectively, "Skybound Defendants") motion to dismiss the second amended complaint. ECF No. 66. The Court will refer to the Skybound Defendants and AMC Defendants collectively as "Defendants."

Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Defendants' motions to dismiss the second amended complaint.

## I. BACKGROUND

### A. Factual Background

Around 2007 and 2008, Plaintiff authored and commissioned others to co-author with him *Dead Ahead*. ECF No. 59 at ¶ 18 ("SAC"). *Dead Ahead* was published by Image Comics as a 3-part series, with the first issue appearing in September 2008, and the two subsequent issues appearing in January 2009 and March 2010. *Id.* at ¶ 19. *Dead Ahead* is a story about "zombies on the high seas." *Id.* at ¶ 20. *Dead Ahead* was also subsequently republished as a single graphic novel containing 14 additional pages of material. *Id.* at ¶ 21. Plaintiff has registered both the comic book series and the graphic novel version of his work with the Copyright Office. *Id.* at ¶ 36.

From November 2008 until about April 2013, Plaintiff engaged David Alpert as his agent. *Id.* at ¶ 23. Plaintiff alleges that "[d]uring this period, Alpert was charged with representing plaintiff's interests for the purpose of consulting with motion picture and television studios on the use or exploitation of [*Dead Ahead*]." *Id.* at ¶ 24.

Alpert and another Defendant, Robert Kirkman (chief operating officer of Image Comics, the original publisher of *Dead Ahead*), were credited as executive producers on the hit AMC show *The Walking Dead*, which began airing in October 2010. *Id.* at ¶¶ 15, 27. Plaintiff alleges that because *The Walking Dead* was so successful, AMC Defendants engaged Alpert and Kirkman to create a spinoff of *The Walking Dead*. *Id.* at ¶ 28. The spinoff took shape in the form of *Fear the Walking Dead*, which premiered on AMC in August 2015. *Id.* at ¶ 29. Alpert and Kirkman were also credited as executive producers of *Fear the Walking Dead*. *Id.* at ¶ 29.

Plaintiff alleges that portions of season 2 of *Fear the Walking Dead* were copied from *Dead Ahead*. *Id.* at ¶ 39-40. Plaintiff asserts that there are many similarities between the two

2
Case No. 18-CV-03803-LHK
ORDER DENYING MOTIONS TO DISMISS

works in terms of plot, characters, dialogue, themes, setting, mood, and pace. The Court discusses each purported type of similarity in turn.

Plaintiff alleges numerous alleged plot similarities between season 2 of *Fear the Walking Dead* and *Dead Ahead*. *Id.* at ¶ 41. For ease, the Court categorizes the alleged plot similarities into 11 groups. First, Plaintiff alleges that "[b]oth works share many of the same events arranged in the same sequence as well as an identical premise, i.e., that a ragtag group of individuals thrown together by circumstance escape a zombie apocalypse from Southern California by fleeing to the Pacific Ocean on board a boat heading south towards Mexico." *Id.* Second, both works "begin on a similarly sized boat located in the Pacific Ocean, off the coast of Southern California, with eight individuals." *Id.* Third, the survivors are "anxious (at first) to evade military ships while developing a plan to head south" because of "concerted military action against civilians . . . to move humans away from the coast and to herd them inland so that the military can use or kill them." *Id.* Fourth, "the characters consult a map and chart their course south from Southern California," and also fish, communicate via HAM radio, and survey the sea. *Id.* Fifth, "[e]arly in both works, the main characters encounter zombies at sea. In both works, the main characters are surprised to find that zombies have adapted to the open water." *Id.* Sixth, "the ship's propeller is used against the zombies." *Id.* Seventh, in *Fear the Walking Dead*, "the main characters then make the decision to tack back toward the coast . . . and seek refuge at an abandoned resort hotel, where a pier features prominently." *Id.* However, the characters "barely make it out of what turn out to be zombie-ridden hotels and eventually lose their boats." *Id.* Plaintiff compares this to *Dead Ahead*, in which the survivors "encounter an abandoned cruise ship essentially serving as an abandoned resort hotel at sea." *Id.* Eighth, the survivors in both works encounter pirates. *Id.* Ninth, a character in *Dead Ahead* "races to the engine room to both hide from the zombies and attempt to start the cruise ship," whereas in *Fear the Walking Dead*, a character "races to the engine room to start the ship." *Id.* Tenth, in *Dead Ahead*, the survivors hide from zombies in an elevator whereas in *Fear the Walking Dead*, a character "flees zombies by hiding in an elevator shaft." *Id.* Eleventh, "in an attempt to destroy the zombies," characters in both *Dead Ahead* and *Fear the Walking Dead*

3

Case No. 18-CV-03803-LHK
ORDER DENYING MOTIONS TO DISMISS

attempt to destroy their ships. *Id.*

Plaintiff also alleges that the characters and dialogue in the two works are very similar. These similarities can be categorized into 5 groups. First, "[b]oth works begin with eight characters, four men and four women, on board their respective vessels struggling to survive a post-apocalyptic world on water." *Id.* at ¶ 42. Second, the protagonists are "male educator[s]" who are not prepared for the leadership roles they are "thrust into . . . given their ostensible backgrounds." *Id.* Third, "[b]oth works feature a mysterious red-headed, female, rifle-sporting character of around the same age named Red, both of whom have fringe bangs and carry similar rifles with the exact same scope . . . ." *Id.* Fourth, "[b]oth works feature a Central-American crew member with a military background whose dialogue is a mixture of English and Spanish and who sports a goatee and carries a pistol." *Id.* Fifth, there are pirates in both works. *Id.*

Moreover, Plaintiff alleges that 3 themes in the works are similar. First, Plaintiff alleges that the theme of life versus death is shared by both works; "the characters are literally in a battle with the dead, and must fight to survive each moment of every day against a very real, yet very dead, threat. In both works, this distinction is an internal one, as the characters are repeatedly faced with the decision to fight to survive or end their own lives before they are swallowed-up by their hellish reality." *Id.* at ¶ 43. Second, the nature of survival allegedly features as a theme in both works, wherein "the characters must adapt, die, or capitulate. In both works, the main characters must go on the offensive and fight to survive, rather than flee and escape." *Id.* Third, the resilience of the human spirit purportedly features as a theme common to both works; Plaintiff claims that "[a]lthough there is little-to-no hope of the characters' finding an oasis in either work, they still find the will to overcome these obstacles." *Id.*

Furthermore, Plaintiff alleges that the setting, mood, and pace of the works are similar. Regarding setting, Plaintiff alleges that "[b]oth works feature stories of fleeing a zombie apocalypse on the high seas." *Id.* at ¶ 44. Also, both works prominently feature a "resort hotel," and a "significant part" of the works "take place on mid-size vessels traveling south"; the vessels also make stops along the way to "search for supplies or signs of life." *Id.* The works also feature

4

Case No. 18-CV-03803-LHK
ORDER DENYING MOTIONS TO DISMISS

elevators and engine rooms, and in both stories, "zombies invade sandy knolls and dunes that emerge from the Pacific Ocean, where the main characters are forced to slaughter what they can and barely escape with their lives." *Id.* Regarding mood, Plaintiff alleges that "[b]oth works present moods that are dark, deliberate, weighty, and purposeful. . . . Both stories are sad and somber and end in an unresolved manner." *Id.* Regarding pace, Plaintiff alleges that the works "are paced at breakneck speed, with gory, violent zombie attacks lurking around every corner . . . .". *Id.*

### B. Procedural History

On June 26, 2018, Plaintiff filed his complaint. ECF No. 1. On August 3, 2018, Plaintiff amended his complaint. ECF No. 28. On August 23, 2018, Skybound Defendants filed a motion to dismiss the amended complaint and for a more definite statement. ECF No. 35. On September 6, 2018, AMC Defendants filed a motion to dismiss the amended complaint. ECF No. 46. On October 9, 2018, Plaintiff filed a second amended complaint. ECF No. 59. The Court denied as moot Skybound Defendants' motion to dismiss and AMD Defendants' motion to dismiss. ECF No. 58.

On November 2, 2018, AMC Defendants filed a motion to dismiss the second amended complaint. ECF No. 67 ("Mot."). On November 2, 2018, the Skybound Defendants also filed a motion to dismiss the second amended complaint. ECF No. 66. On November 30, 2018, Plaintiff filed an omnibus opposition to the Defendants' motions to dismiss. ECF No. 70. On December 14, 2018, AMC Defendants filed a reply. ECF No. 73. Also on December 14, 2018, the Skybound Defendants filed a reply. ECF No. 72.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

5

Case No. 18-CV-03803-LHK
ORDER DENYING MOTIONS TO DISMISS

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III. DISCUSSION

First, the Court discusses Plaintiff's and AMC Defendants' requests for judicial notice. Then, the Court discusses the merits of the motion to dismiss.

### A. Requests for Judicial Notice

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Public records, including judgments and other publicly filed documents, are

6

proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The Court first addresses Plaintiff's request for judicial notice, then AMC Defendants' request.

Plaintiff seeks judicial notice of Copyright Office Public Catalogue pages for various *Fear the Walking Dead* and *The Talking Dead*[1] episodes showing that AMC Film Holdings LLC claims the copyright on those episodes. ECF No. 70-2. The Copyright Office Public Catalogue constitutes public records. *DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) ("The request for judicial notice of Plaintiff's copyright registration is granted as it is common practice for courts to take judicial notice of copyright registrations."). Thus, Plaintiff's request for judicial notice is GRANTED.

AMC Defendants request that the Court take judicial notice of two categories of items. First, AMC Defendants request that the Court take judicial notice of the *Dead Ahead* comic books, the *Dead Ahead* graphic novel, and the *Fear the Walking Dead* series. All three of these works have been referenced in the complaint. *See, e.g.*, SAC at ¶¶ 29 (referencing *Fear the Walking Dead*), 35 (referencing the comic book and graphic novel versions of *Dead Ahead*). Thus, under the incorporation by reference doctrine recognized in *Knievel*, the Court GRANTS judicial notice of all three works.

Second, AMC Defendants request that the Court take judicial notice of "generic elements of action-adventure, thriller, and horror films and television series, including those involving invasions or outbreaks of some sort and those that take place at sea." ECF No. 67-1 at 1. Specifically, AMC Defendants want the Court to take judicial notice of the concepts of: "[a] ragtag group of individuals thrown together by circumstance"; "[d]epicting characters on boats

---

[1] *The Talking Dead* is a companion talk show to *Fear the Walking Dead*. SAC at ¶ 31 n.2.

7
Case No. 18-CV-03803-LHK
ORDER DENYING MOTIONS TO DISMISS

consulting a map, fishing, communicating by radio, or surveying the sea from time to time"; "[a]ttempting to evade the military to emergency situations"; "[p]ortraying characters seeking refuge and searching for supplies"; "[f]eaturing pirates in a fictional work that involves bodies of water"; "[u]sing an elevator to hide or escape"; and "[u]sing fire to destroy enemies." *Id.* at 1-2. In support of these purportedly generic concepts, AMC Defendants reference more than a dozen books, films, Wikipedia articles, and websites, none of which are mentioned in the SAC.

Tellingly, the Court is not asked to take judicial notice of these books, films, Wikipedia articles, and websites. Rather, AMC Defendants cite these sources to show the contents therein support the generic nature of the aforementioned concepts. In essence, what AMC Defendants ask is that the Court take judicial notice of the aforementioned concepts based purely on AMC Defendants' representation that the underlying works, of which the Court is not asked to take judicial notice, show that the above concepts are generic. AMC Defendants point to no legal authority—and the Court finds none—that supports this unusual request for judicial notice. Moreover, the Court finds that whether the above concepts are generic is subject to reasonable dispute, and the Court, pursuant to Ninth Circuit law, cannot take judicial notice of any facts that are subject to reasonable dispute. *Lee*, 250 F.3d at 689. Accordingly, AMC Defendants' request to have the Court take judicial notice of the aforementioned supposedly generic concepts is DENIED.

**B. The Copyright Claim**

The Court first discusses Plaintiff's copyright cause of action, then turns to Plaintiff's breach of fiduciary duty claim.

"To establish a successful copyright claim, a plaintiff must show: (1) his ownership of the copyright; (2) the defendant's access to his work; and (3) 'substantial similarity' between the defendant's work and his own." *Berkic v. Crichton*, 761 F.2d 1289, 1291 (9th Cir. 1985). Analysis of prong (3)—any "substantial similarity" between the works—is the crux of Defendants' motion to dismiss. Defendants claim that there is no substantial similarity between *Dead Ahead* and *Fear the Walking Dead*. The Court analyzes each prong in turn.

8

### 1. Prong (1)—Ownership of the Copyright

Regarding ownership of the copyright, Plaintiff alleges that he registered all versions and editions of *Dead Ahead* with the Copyright Office. SAC at ¶ 36. AMC Defendants and Skybound Defendants do not dispute Plaintiff's copyright ownership. Thus, Plaintiff has sufficiently alleged ownership of the copyright.

### 2. Prong (2)—Defendants' Access to the Work

"Proof of access requires 'an opportunity to view or to copy plaintiff's work.'" *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (quoting *Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)). AMC Defendants and Skybound Defendants do not dispute that they had access to Plaintiff's work. Thus, Plaintiff has sufficiently alleged Defendants' access to *Dead Ahead*.

### 3. Prong (3)—Substantial Similarity Between *Dead Ahead* and *Fear the Walking Dead*

There are two tests for substantial similarity: an intrinsic test and an extrinsic test. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006). "[T]he intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id.* Thus, the intrinsic test is not relevant here.

In determining substantial similarity on a motion to dismiss, district courts employ the extrinsic test. *See, e.g.*, *White v. Twentieth Century Fox Corp.*, 572 Fed. App'x 475, 476-77 (9th Cir. 2014) (using the intrinsic test to analyze substantial similarity on a motion to dismiss); *Implus Footcare, LLC v. Ontel Prods. Corp.*, 2015 WL 12655703, at *3 (C.D. Cal. Aug. 28, 2015) (same); *Danjaq, LLC v. Universal City Studios, LLC*, 2014 WL 7882071, at *3 (C.D. Cal. Oct. 2, 2014) (same); *Marchel Design, Inc. v. Best Master Enterps., Inc.*, 2008 WL 4723113, at *3 (C.D. Cal. Oct. 23, 2008) (same); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *5 (N.D. Cal. Oct. 20, 2008) (same); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (same). The extrinsic test is "objective in nature," and "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Funky Films*, 462 F.3d at 1077.

"[W]hen applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). For instance, "[s]cenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id.* at 823. "Under the scenes a faire doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright." *Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004). Also, "[f]amiliar stock scenes and themes that are staples of literature are not protected." *Cavalier*, 297 F.3d at 822.

However, the Ninth Circuit has cautioned that "[s]ummary judgment is not highly favored on questions of substantial similarity in copyright cases." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012). "*A fortiori*, this same limitation applies to a motion to dismiss." *Minx Int'l, Inc. v. Around the World Apparel, Inc.*, 2016 WL 7496745, at *2 (C.D. Cal. July 29, 2016).

The Ninth Circuit has held that "[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, what Defendants essentially seek is summary judgment because they stray beyond the four corners of the complaint and into factual disputes over the similarities and differences between *Dead Ahead* and *Fear the Walking Dead*, including whether certain elements of *Dead Ahead* are protectable under copyright law. Moreover, AMC Defendants' request for judicial notice that certain concepts are generic further demonstrates that Defendants' motions are essentially motions for summary judgment.

However, Ninth Circuit law is clear that "[t]he extrinsic test requires analytical dissection of a work and *expert testimony*." *Swirsky*, 376 F.3d at 845 (emphasis added). Given that Defendants' motions are 12(b)(6) motions, there is no full record to review or any expert testimony upon which the Court may rely. Other courts have denied motions to dismiss in copyright cases due to an insufficient record. For instance, in *Cabell v. Zorro Prods., Inc.*, the

10

court denied defendants' motion to dismiss a plaintiff's copyright allegations involving a musical script and audio performances because the "case lacks the kind of comprehensive factual record and undisputed facts that would allow the court to apply the 'extrinsic test' at this stage." 2017 WL 2335597, at *8 (N.D. Cal. May 30, 2017). Moreover, the court in *French West, Inc. v. Macy's Inc.* denied a motion to dismiss a plaintiff's copyright allegations over a textile print design because "we have no threshold understanding of what a 'nautical chain design' is and whether it incorporates any common themes of selection, coordination, and arrangement that are unprotectible [sic] . . . ." 2013 WL 12133844, at *2 (C.D. Cal. Jan. 29, 2013). This Court similarly finds that the present record is insufficient to conduct the extrinsic test.

Although some district courts have opined that some concepts are generic on motions to dismiss, and AMC Defendants point to such cases in their reply, this Court respectfully disagrees with these non-binding cases, which offer little analysis. *See Zella*, 529 F. Supp. 2d at 1130 (involving television shows); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1015 (N.D. Cal. 2018) (involving a novel and a screenplay); *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1164, 1166 (C.D. Cal. 2016) (involving a screenplay and a television series); *Heusey v. Emmerich*, 2015 WL 12765115, at *1 (C.D. Cal. Apr. 9, 2015) (involving screenplays); *DuckHole*, 2013 WL 5797279, at *1-2 (involving a film treatment and a television series). All these cases offer little justification for why certain elements are generic or scenes-a-faire, and thus unprotectable under copyright law. Thus, the Court finds these cases unpersuasive and declines to follow them.

The most prudent course of action is to follow Ninth Circuit precedent, which clearly states that "[t]he extrinsic test requires analytical dissection of a work and expert testimony." *Swirsky*, 376 F.3d at 845. In sum, based on the record before the Court, the Court cannot conduct the analysis to separate the unprotectable elements from the protectable elements in *Dead Ahead*. As such, the Court DENIES Defendants' motions to dismiss the copyright claim.

### C. The Breach of Fiduciary Duty Claim

Next, the Court discusses Defendants' motions to dismiss Plaintiff's breach of fiduciary duty claim. Plaintiff claims that Alpert "violated and continues to violate his fiduciary duty to

11

1  plaintiff by engaging in a pattern and practice of self-dealing . . . ." SAC at ¶ 48. Plaintiff also claims that the other Defendants "substantially assisted and therefore aided and abetted Alpert in breaching his duty to plaintiff." *Id.* at ¶ 50.

"The elements of a cause of action for breach of fiduciary duty are: '(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.'" *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2008 WL 5122196, at *5 (S.D. Cal. Dec. 4, 2008) (quoting *Stanley v. Richardson*, 35 Cal. App. 4th 1070, 1077 (1995)). "A defendant is liable for aiding and abetting another in the commission of an intentional tort, including a breach of fiduciary duty, if the defendant knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).

AMC Defendants argue that Plaintiff has not adequately pleaded that AMC Defendants aided and abetted Alpert's alleged breach of fiduciary duty to Plaintiff because AMC Defendants did not provide "substantial assistance or encouragement" to Alpert connected to the alleged breach. The Court finds AMC Defendants' argument unpersuasive.

Alpert is alleged to have been Plaintiff's agent. SAC at ¶ 23. Both Alpert and Kirkman are credited as executive producers of *Fear the Walking Dead*, which was commissioned by the AMC Defendants. *Id.* at ¶¶ 27-28. Plaintiff also alleges that AMC Defendants' employee Dave Erickson "worked closely and in concert with David Alpert and Robert Kirkman in the developing, scripting, casting and production of FEAR THE WALKING DEAD . . . ." *Id.* at ¶ 49. Moreover, "as showrunner and a credited co-creator, Dave Erickson served as the primary creative contributor acting on behalf of the AMC Entities, in their collaboration in and funding of the development, scripting, casting, and production of FEAR THE WALKING DEAD." *Id.* Furthermore, Plaintiff alleges that "all the other defendants named knew of Alpert's relationship with and the services he was providing plaintiff." *Id.*

Thus, Plaintiff has alleged that the AMC Defendants knew of Alpert's agency relationship with Plaintiff, and despite that, provided Alpert with funding and support to produce *Fear the*

12

*Walking Dead*. As the court held in *Minnesota Life Ins. Co. v. Philpot*, providing funding is enough to show "substantial assistance or encouragement" in aiding and abetting the breach of fiduciary duty. 2012 WL 4486311, at *8 (C.D. Cal. Sept. 27, 2012). Therefore, AMC Defendants' argument that there are no allegations that AMC defendants provided "substantial assistance or encouragement" to Alpert is unavailing.

Therefore, the Court DENIES Defendants' motions to dismiss the breach of fiduciary duty claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions to dismiss the copyright and breach of fiduciary duty claims.

**IT IS SO ORDERED.**

Dated: January 31, 2019

_____
LUCY H. KOH
United States District Judge